**DAVID J. HOLDSWORTH** (4052)

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT 84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| KHANNI R. BILLS, | : | **VERIFIED COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GRASS VALLEY USA, LLC, | : | Case No.   2:14-cv-00693 |
| | : | |
| Defendant. | : | Hon.      Brooke C. Wells |

Khanni R. Bills, Plaintiff herein, by and through her counsel of record,

David J. Holdsworth, demands trial by jury, files this Verified Complaint against Grass

Valley USA, LLC, named as Defendant herein, and as and for causes of action, alleges

as follows:

## I.  PARTIES

1.      Plaintiff Khanni R. Bills (hereinafter "Plaintiff") is a citizen of the

United States and a resident of the State of Utah.

2.     The entity named as the Defendant in this civil action is Grass Valley USA, LLC.  At all times relevant hereto, Grass Valley USA, LLC (hereinafter "Defendant" or "the employer" or "Grass Valley"), employed 15 or more employees in th State of Utah and is, therefore, subject to Title VII of the Civil Rights Act of 1964, as amended.  Grass Valley is in the business of selling control boards and power supplies to radio, television and other media companies.

3.     On or about April 24, 2012, Ms. Bills filed a Charge of Discrimination with the Utah Labor Commission and the U.S. Equal Employment Opportunity Commission in which she alleged that Defendant had discriminated against her based on her race (Asian/Hispanic), gender (female) and that Grass Valley had retaliated against her after she had engaged in protected activity.

4.     Plaintiff filed her Charge of Discrimination within 180 days from the last date of the alleged harm.  Thus, all jurisdictional requirements have been met as required by the Title VII of the Civil Rights Act of 1964, as amended.

## II.  JURISDICTION AND VENUE

5.     Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, for discrimination on the basis of race, gender and for retaliation.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e-5.

Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332, 1367 and 42 U.S.C. § 1981, et. seq.

6.       Venue is properly set in this Court, in that the employment facts, events and decisions Plaintiff alleges herein occurred and the causes of action Plaintiff alleges herein arose in the federal district of Utah.

### III.  STATEMENT OF FACTS AND CLAIMS

**A.      STATEMENT OF FACTS**

7.       Plaintiff is Asian/Hispanic and female.  Plaintiff is currently 57 years of age.

8.       Plaintiff alleges that on or about February 4, 2008, Grass Valley hired her to work as an administrative assistant to the V.P. Marketing, Product Management for the router product line (she had worked for Grass Valley on a temporary basis from April 18, 2007 to November 18, 2007).

9.       From 2008 to early 2010, Byron Brown was Ms. Bills' supervisor. In February 2010, Grass Valley fired Byron Brown.  Martin Fry took Mr. Brown's place and became the supervisor over Ms. Bills.  Ms. Bills continued to work with Mr. Fry from approximately March 2010 to October 2010, when the company promoted Mr. Fry.

10.     Ms. Bills alleges that both Byron Brown, her first supervisor, and Martin Fry, her second supervisor, valued her job performance and praised her efforts. *See* Exhibit A (2008).  These documents support a description of service by a Grass Valley employee that goes well beyond just "generally acceptable" performance.  In fact, the Cash Spot Award the company awarded Ms. Bills in 2010 was for $1,000.  This award is rarely given to support staff in this amount, and it was an extraordinary act of recognition by Martin Fry because, at the time, Grass Valley was in financial distress.  The Cash Spot Award was solely for Ms. Bills' extraordinary effort in putting on an event that Ms. Bills single-handedly created and showcased for the entire Grass Valley North American Sales Team.  This assignment is not given easily to any Grass Valley employee, let alone one who displays poor job performance.

11.     From October 2010 through December 2010, Ms. Bills was reassigned to work for Steve Dupaix.

12.     Plaintiff alleges that, beginning with her work with Mr. Dupaix, Grass Valley subjected her to harassment and discrimination based on and because of her race and gender.  Petitioner also alleges that during her employment with Grass Valley, Grass Valley retaliated against her because of her protected activity in reporting a hostile work environment.

13.     Ms. Bills alleges that working with Mr. Dupaix was a very unpleasant experience.  He was frequently very angry, threw things and had temper tantrums in her presence.  Mr. Dupaix also yelled at her on several occasions.  Ms. Bills alleges Mr. Dupaix treated Ms. Bills as specified because of her race and/or gender.

14.     Ms. Bills alleges that, on one occasion, when Steve Dupaix and she were alone in his office, Mr. Dupaix closed the door of his office and proceeded to tell Ms. Bills that when he was at an NAB convention in Las Vegas, Nevada, he was in the hotel room next to the hotel room where R.S., the Grass Valley Human Resources Director, was staying.  He recounted to Ms. Bills that he had heard her having sex with another employee.  Mr. Dupaix went on to say that she had been "very loud and he could hear everything that was going on."  He also said that he was kept up all night by "the sounds" coming from the room next door and that he was very tired the next morning for a sales meeting.  His facial expressions, tone of voice and grin were very unnerving for Ms. Bills.  This experience made Ms. Bills very uncomfortable.  She felt sick.

15.     Ms. Bills alleges that because this conversation with Mr. Dupaix made her very uncomfortable, she immediately went to Martin Fry and reported Mr. Dupaix for "making sick comments" and engaging in "unprofessional conduct."  Ms.

Bills alleges that Mr. Fry responded to her complaint by telling her to "learn to manage your manager."

16.     Ms. Bills alleges that she did her best to support Mr. Dupaix in her position as administrative assistant, but working for Mr. Dupaix was difficult.

17.     Ms. Bills alleges that, in the fall of 2010, she also complained to Anita Janssen, a Human Resources manager for Grass Valley, about how Mr. Dupaix was treating her.  Ms. Bills did not hear back from Anita Janssen.

18.     In the fall of 2010, after Ms. Bills' complaints about Mr. Dupaix's treatment of her did not generate any response by the company, Ms. Bills requested to be removed as Mr. Dupaix's administrative assistant.  In late December 2010, the company reassigned her to work as the administrative assistant for Randall Redondo in Engineering.

19.     Ms. Bills alleges that her new manager, Randall Redondo, continually made disparaging remarks about her to her and to others.

20.     Ms. Bills alleges that Grass Valley has claimed that "Ms. Bills' job performance "began to significantly decline in 2011...," that she "didn't get along with staff" and that she had "...a documented history of workplace conflicts with her colleagues."  Ms. Bills alleges that such statements are false.

21.     Ms. Bills alleges that during her period of employment with Grass Valley, her job performance was exceptional.  Nevertheless, the only raise that she received was in 2009 for $0.04 (four cents) per hour.  She alleges she received raises lower than similarly situated white and male employees in the Grass Valley Salt Lake site.

22.     Ms. Bills alleges that she rarely called in sick and hardly ever took vacations and that on her last paycheck from Grass Valley, she had over 132 hours of accrued sick leave pay available to her.  *See* Exhibit B.  (Grass Valley only paid her for two of these hours.)

23.     In October 2011, Grass Valley terminated Ms. Bills' employment.  Ms. Bills alleges that Grass Valley's reasons as to why it eventually terminated her employment are a pretext to mask the real and true reason for Grass Valley's adverse employment actions towards her based on the following facts:

a.      In Spring of 2011, Grass Valley had Ms. Bills, an administrative assistant, coordinate one of the most important industry trade shows that had the power to make or break Grass Valley's second quarter 2011 revenue target and actually sent her to the trade show;

b.      The NAB Spring 2011 trade show was a critical trade show for Grass Valley because, if Grass Valley had failed to put on a profitable trade

show for Francisco Partners (the new Grass Valley owners as of January 2011), Grass Valley would have had to layoff many employees;

c.      In 2011, there were over 30 Grass Valley administrative assistants, but Ms. Bills was the only administrative assistant Grass Valley selected to attend the NAB Spring 2011 trade show;

d.      Grass Valley was well aware of Ms. Bills' impeccable work ethic and Grass Valley was aware that she would diligently work with her team to provide a quality trade show that would ensure an increase in revenue;

e.      Grass Valley spent thousands of dollars to send Ms. Bills to Las Vegas for the NAB 2011 trade show in April 2011.  The company did not even approve Ms. Bills' supervisor, Randall Redondo, to attend this trade show;

f.      NAB is one of two major trade shows each year where Grass Valley has an opportunity to showcase and to sell its products and services to major networks and to make hundreds of millions of dollars in revenue;

g.      After the NAB 2011 trade show, Grass Valley management trusted Ms. Bills to ship, track and return all equipment and products valued at millions of dollars.  *See* Exhibits C and D; and

h.      Grass Valley reported that NAB 2011 was the best trade show ever for Grass Valley.

24.     Ms. Bills alleges that on April 15, 2011, the Friday before the NAB 2011 trade show started, she attended a social gathering of several Grass Valley employees in Las Vegas, Nevada.  During this social gathering, she reported to Mary Gallagher, the executive administrative assistant to Grass Valley's Chief Executive Officer, that Supervisor Redondo's actions towards her were unwelcome and were creating a hostile work environment.  She informed Ms. Gallagher that supervisor Redondo was forcing her to do demeaning chores that included the following:

a.     Readjusting all the ceiling tiles in the building.  *See* Exhibit E; and

b.     Ensuring that all of the office furniture was dusted and cleaned, even though Grass Valley contracted with a janitorial company to do such chores.

25.     Ms. Bills alleges she also informed Ms. Gallagher that Randall Redondo had given her an overwhelming amount of work and consistently threatened to "fire" her.

26.     Ms. Bills alleges she also informed Ms. Gallagher that, due to the work Mr. Redondo had been loading on her and the stress this was causing her and the hostile work environment in which she had been working, she had missed the morning

flight out of Salt Lake City and had had to take an afternoon flight, just barely making it to Las Vegas in time to attend the pre-trade show social get together.

27.     Ms. Bills alleges that, by the time she arrived in Las Vegas, she was so upset and she broke down crying during the social get together before the NAB trade show. *See* Exhibit F.

28.     Ms. Bills alleges that her complaints concerned Ms. Gallagher and Ms. Gallagher told Ms. Bills that she would be sure to look into Ms. Bills' complaints.

29.     Thus, Plaintiff alleges that on April 15, 2011, Ms. Bills complained to Grass Valley management about her supervisor's conduct towards her in several particulars.

30.     Thereafter, Plaintiff continued to complain to Grass Valley management about what she, in good faith, believed were practices discriminatory towards her because of her race, and gender.

31.     Ms. Bills alleges that after the NAB show ended, and upon her return to work in Salt Lake City on Monday, April 18, 2011, Randall Redondo quickly came to Ms. Bills' desk and demanded that she meet with him. *See* Exhibit G.

32.     Ms. Bills alleges that when she entered Mr. Redondo's office, Anita Janssen, Grass Valley Human Resources, was waiting there. During the meeting with Mr. Redondo and Ms. Janssen, the two interrogated Ms. Bills and repeatedly asked

her why she had reported a hostile work environment.  Ms. Bills alleges Randall

Redondo was verbally abusive towards her and threatened her job.  This surprise attack

caused Ms. Bills to become physically ill.  She informed Mr. Redondo that she was ill

and could barely speak.  After she told him she was ill, Mr. Redondo refused to stop the

meeting.  Anita Janssen initially appeared to be alarmed and told Mr. Redondo that the

meeting could be continued to a later time, but Mr. Redondo said to Ms. Bills: "No, we

are going to discuss this now, or we are going to have another conversation.  And you

know what I mean by that!"

33.     Ms. Bills alleges that, during the meeting, Ms. Janssen did nothing

to stop Mr. Redondo's bullying towards Ms. Bills.  Due to Ms. Bills' becoming ill, she

agreed to anything Mr. Redondo said during the meeting, just so that she could be

excused from the meeting.

34.     Ms. Bills alleges that, after the meeting, Ms. Janssen told her that

she didn't see anything that needed to be investigated and, her impression was that Ms.

Bills has just been with "a group of ladies who were drinking and having a lively

conversation."

35.     Ms. Bills alleges that, unbeknownst to Ms. Bills, when Ms. Bill's

complaints had come to the attention of Mr. Redondo, Mr. Redondo had decided he

wanted to fire Ms. Bills.  He had actually recommended terminating Ms. Bills and when

the company did not go along with his recommendation, he started to build a case against her.  *See* Exhibit H.

36.     Ms. Bills alleges that a month later, in May 2011, Mr. Redondo called her suddenly into his office.  When Ms. Bills went into his office, Ms. Janssen was on speaker phone.  Mr. Redondo issued Ms. Bills a disciplinary notice.  *See* Exhibit I.

37.     Ms. Bills alleges that she initially disagreed with everything on the disciplinary notice.

38.     Ms. Bills alleges that the first paragraph of the notice indicates that the company was disciplining Ms. Bills for making "negative comments about Randall Redondo."  The letter made no mention of concerns regarding Ms. Bills' complaint of hostile work environment.

39.     Ms. Bills alleges that, in the second paragraph of the notice, the company states it was reprimanding Ms. Bills for her "unwillingness to perform basic administrative tasks by Steve Dupaix without showing frustration."  Ms. Bills alleges that such statements were untrue, that such concerns had never been brought to her attention.

40.     Ms. Bills alleges that, in the third paragraph, the letter states "the information you are privileged to in Martin's senior staff meeting is Company

Confidential and should never be shared." Prior to this notice, Ms. Bills was never told that she had breached any confidentiality regarding any senior meetings and she asserts that if this had been a problem, that Martin Fry would have informed her about the confidentiality of such information discussed in the meetings. This formal disciplinary notice/warning was the first time the company had ever told her of any concerns regarding her performance. Ms. Bills alleges such serious allegations is a pretext to justify Grass Valley's adverse employment actions against her. Ms. Bills alleges that such discipline and reprimand was unjustified and retaliatory.

41. Ms. Bills alleges that when she tried to respond to the allegations and defend herself during the May 2011 meeting, Mr. Redondo gave her a menacing look, which intimidated her from pursuing the matter further because she was afraid of further provoking him.

42. Ms. Bills alleges that thereafter, Mr. Redondo subjected Ms. Bills to discrimination and retaliation in various ways, including, but not limited to:

a. Singling her out for poor treatment and not treating similarly situated white and male employees in such a manner;

b. Informing her that she was a "burden" to other staff members;

c. Informing her to not "bother" the other employees;

d. Informing her that the only progress she had shown was that "you're not gossiping;"

e. Subjecting her to demeaning and rude comments;

f. Commenting that, "you don't belong here;"

g. Commenting that, "this isn't a job for you;"

h. Commenting that, "you are overpaid," "you're paid enough," "other administrative assistants makes $13 to $15 an hour;"

i. Commenting that, "anyone can be fired and everyone is replaceable;"

j. Not providing her with the tools and information necessary for her to improve her performance. *See* Exhibit J;

k. Upon her requesting a performance evaluation, Supervisor Redondo informing her that, because she was an hourly employee, he didn't have to give her a performance evaluation. *See* Exhibit K (the performance evaluation she received while being supervised by Byron Brown in 2008 to 2009).

43. After the May meeting, supervisor Redondo ordered Ms. Bills to replace her name plate to remove "Office Manager" from her full title of "Administrative Assistant and Office Manager" to just "Administrative Assistant."

Redondo also had her make the same change on her business cards. Thus, Plaintiff alleges that after she complained about Redondo's conduct, Redondo disciplined her and then demoted her.

44. Ms. Bills alleges supervisor Redondo and Grass Valley held her to a different standard and subjected her to different, disparate and adverse behavior, as compared to Caucasian employees and as compared to male employees. For example, all of the male engineering staff received new desktop computers and updated software except Ms. Bills (under Martin Fry, a new computer was ordered for Ms. Bills, which Supervisor Redondo canceled).

45. Plaintiff alleges supervisor Redondo took these adverse employment actions towards her because she had complained of what she, in good faith, believed were discriminatory and retaliatory practices. In other words, Plaintiff alleges Grass Valley retaliated against her for engaging in protected activity.

46. Plaintiff alleges that in October 2011, she successfully ordered, managed, tracked, and shipped sales material and equipment for the second biggest industry trade event for Grass Valley (the IBC in Amsterdam, Europe). She alleges that on October 12, 2011, at 1:00 p.m., after she had completed her work on the IBC show (which had been very successful), Randall Redondo came to her desk and escorted her into his office, where Anita Janssen was waiting. Mr. Redondo informed Ms. Bills that

the company was letting her "go." Redondo informed Ms. Bills she was not being

terminated, she was just being "let go." When she inquired as to why the company was

ending her employment, Redondo gave her the following reasons:

        a.     Not demonstrating initiative;

        b.     Lack of timely delivery; and

        c.     Not meeting the quality required of the deliverables.

    47.    Ms. Bills alleges that each of the reasons are false and pretextual.

She alleges the reasons stated for her termination are pretextual based on several facts,

including:

        a.     Ms. Bills alleges she has always demonstrated initiative.

She alleges that the company told her repeatedly that she went beyond what was

expected. As an example, Mr. Fry told her that he awarded the Cash Spot

Award to her because of all the positive comments and praise the sales group

had about her;

        b.     Ms. Bills alleges there was never a lack of timely delivery.

She alleges she took pride in the fact that she was on time or ahead of schedule.

She alleges the company placed her as the manager for ensuring all deliverables

would be received within the time needed, i.e., the NAB and IBC trade shows,

and that she delivered the financial report twice a week on time for over two-

and-a-half years, without errors. She alleges she completed all assignments on time, even under duress;

       c.     Ms. Bills alleges the quality of her deliverables was excellent. In the chaotic environment that Mr. Redondo created for her during the summer of 2011, in addition to performing her daily duties, she reconstructed two offices, remodeled five offices, facilitated an employee event scheduled on a Saturday at an amusement park and successfully coordinated the staging of the fall 2011 IBC trade show. She received multiple thanks from her peers and compliments from other employees regarding her efforts and achievements. (Randall Redondo never complimented her on her work or her efforts);

       d.     During the formal discipline notice Redondo had issued her in May 2011, none of these concerns had been mentioned.

    48.    Ms. Bills alleges that, after the company terminated her employment, she applied for unemployment insurance benefits. The Utah Department of Workforce Services informed her that Grass Valley had informed it that she was "not qualified" for her job and, therefore, had terminated her employment. The Department of Workforce Services counselor stated that he found Grass Valley's reason to be unfounded and determined that the company's information as to why it had ended her employment did not satisfy the Department's just cause standard.

49.     In other words, the Department of Workforce Services fond that Ms. Bills was not at fault in her discharge.  *See* Exhibit L.  Grass Valley did not appeal the Department's decision.

50.     As noted above, on April 24, 2012, after Grass Valley terminated her employment, Ms. Bills filed a Charge of Discrimination with the UALD and EEOC.

51.     Ms. Bills was unemployed from October 12, 2011 to September 12, 2012.  On September 12, 2012, Ms. Bills was hired at the Utah State Office of Education as office support staff at $10.46 an hour on a full time basis.

52.     On or about July 3, 2014, the EEOC issued a Notice of Right to Sue letter to Ms. Bills.  Ms. Bills received the Notice of Right to Sue on or about July 6, 2014.

## B.     CLAIMS.

### A.  Prima Facie Case of Harassment–Race and/or Gender

53.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 48 above as if alleged in full herein.

54.     In order to establish a prima facie case of harassment based on race, Plaintiff must establish that: (1) she is a member of a protected class; (2) the Defendant subjected her to unwelcome and unwanted conduct; (3) the Defendant's conduct towards Plaintiff was based on Plaintiff's race and/or gender; and (4) the

harassment complained of was sufficiently severe or pervasive as to alter the terms and conditions of her employment, such as by creating a hostile work environment.

55.     Ms. Bills is the Asian/Hispanic race and female and, thus, she is a member of the respective protected classes.

56.     Ms. Bills alleges that, as set forth above, on several occasions and in several ways, Grass Valley subjected Ms. Bills to unwelcome and unwanted conduct.

57.     Ms. Bills alleges the conduct Grass Valley subjected her to and as to which she complained of was based on her race and/or gender.

58.     Plaintiff alleges the conduct was sufficiently severe or pervasive that it altered the terms and conditions of her employment and created a hostile environment in which she had to work.

**B.  Prima Facie Case of Discrimination by Disparate Treatment—Race and/or Gender**

59.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 54 above as if alleged in full herein.

60.     In order to establish a prima facie case of discrimination based on race and/or gender, Plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) her employer subjected her to one or more adverse employment actions; and (4) the circumstances surrounding the

adverse action(s) give rise to an inference of discrimination on the basis of race and/or gender.

61.     Plaintiff is of the Asian/Hispancic race and female and, thus, she is a member of the respective protected classes.

62.     Plaintiff alleges she is qualified for the position she held.  Grass Valley had employed Plaintiff since 2008 and, during her employment, she had performed at a fully satisfactory or better level.  At the time of the events alleged herein, Ms. Bills was qualified for the position she held.

63.     Plaintiff alleges that, after she began complaining about Mr. Dupaix's actions and then Mr. Redondo's actions towards her, Grass Valley began to take several adverse employment actions against her.

64.     Adverse employment action includes any significant change in employment status, such as hiring, serious discipline, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Piercy v. Makela, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting Hillig v. Rumsfeld, 381 F.3d 1028, 1032-33 (10th Cir. 2004)).

65.     In approximately May 2011, Grass Valley disciplined Ms. Bills, demoted her, and placed Ms. Bills on probation.  Her probation resulted in significant changes in her employment status, job security and job opportunities.  Ms. Bills alleges

20

that, after she continued to complain of a hostile work environment, such adverse action

has continued and escalated, ending ultimately in the company's decision to terminate

her employment.  A few months after she began voicing her complaints, Redondo fired

Ms. Bills.

       66.     Plaintiff alleges Grass Valley treated her differently and

disparately compared to how it treated other, similarly situated employees not of her

race and/or gender. Thus, Plaintiff alleges the circumstances surrounding the adverse

employment actions give rise to an inference of discrimination on the basis of race and

gender.

**C.  Prima Facie Case of Retaliation**

       67.     Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 62 above as if alleged in full herein.

       68.     In order to establish a prima facie case of retaliation, Plaintiff must

establish: (1) she engaged in protected opposition to discrimination; (2) Grass Valley

subjected Plaintiff to an adverse employment action contemporaneous with or

subsequent to the protected activity; and (3) there is a causal connection between the

protected activity and the adverse employment action.

       69.     Plaintiff engaged in a protected activity.  A protected activity

consists of: "opposing a practice made unlawful by one of the employment

discrimination statutes; or filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under the applicable statute." *See* EEOC Compliance Manual, Sec. 8 (May 20, 1998).

70.     Employee opposition to employer conduct is protected if it is based on a good faith belief that Title VII has been violated.

71.     Plaintiff engaged in protected activity at various times and in various ways such as when she complained to management about how her immediate supervisors were treating her.

72.     Plaintiff alleges that he, in good faith, believed that her immediate management was treating her poorly and disparately because of her race and gender and she complained of having to work in a hostile work environment.

73.     Plaintiff alleges that after she engaged in protected activity, her supervisor subjected Plaintiff to various adverse employment actions, including disciplining her, formally reprimanding her, placing her on probation and ultimately terminating her employment.

74.     Plaintiff alleges there is a causal connection between her protected activity and the adverse employment actions her supervisor took against her on the basis of the following facts:

a.     Plaintiff alleges her protected activity was followed shortly thereafter by various adverse employment actions;

b.     Plaintiff alleges that Grass Valley management treated her somewhat more favorably before she complained than it has treated her after she complained; and

c.     Plaintiff alleges that Grass Valley management has treated her differently and disparately compared to how it has treated similarly situated employees who have not complained;

d.     Plaintiff alleges that Redondo was motivated to punish Ms. Bills and justify firing Ms. Bills because of her complaints as to his conduct towards her;

e.     The reasons Redondo gave Ms. Bills for the adverse employment action are false and, therefore, pretextual.

## IV.  DAMAGES

75.     Ms. Bills alleges Grass Valley's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, and lost opportunities.  She also alleges Grass Valley's actions caused her to become paranoid, caused her to have nightmares, caused her to be unable to sleep, caused her to become forgetful, caused her frustration, worry and fear and emotional distress.  She

also alleges that the employment caused her to develop PTSD (she was prescribed an antidepressant in March 2011 by Jacolin Dehler Shifrar, N.P., M.S., C.N.M.). *See* Exhibit M.

## V. RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.     Declaring that Grass Valley harassed and discriminated against Ms. Bills on the basis of her race and gender and retaliated against Ms. Bills on the basis of her protected activity, all in violation of Title VII of the Civil Rights Act;

2.     Awarding Ms. Bills "make whole" relief, including cancellation and expungement of any disciplinary actions from her personnel file, payment of all wages and benefits lost until Ms. Bills secures comparable employment or for a period of five years, whichever comes first;

3.     Awarding Ms. Bills her reasonable attorney's fees and costs;

4.     Awarding Ms. Bills such other relief as may be just and equitable.

DATED this 24th day of September, 2014.


　　　　　　　　　　　　　　 /s/ David J. Holdsworth
　　　　　　　　　　　　　David J.  Holdsworth
　　　　　　　　　　　　　*Attorney for Plaintiff*

VERIFICATION

Khanni R. Bills, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she has read the foregoing VERIFIED COMPLAINT and understands the contents thereof, and the allegations made therein are true of her own knowledge, except as to those matters alleged on information and belief which she believes to be true.

_\_/s/ Khanni R. Bills_____
Khanni R. Bills

SUBSCRIBED AND SWORN to before me, a Notary Public, this \_\_\_\_ day of September, 2014.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

_____